IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NORMAN GREGORY,

       Plaintiff,                    No. CIV S-05-1393 FCD EFB P

     vs.

B.C. ADAMS, et al.,

       Defendants.             FINDINGS AND RECOMMENDATIONS

       Plaintiff is a state prisoner proceeding pro se and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff seeks damages from pain endured when, allegedly, he was placed in handcuffs for five-and-a-half hours. He also alleges that he was later subjected to false disciplinary charges in retaliation for filing grievances relating to the incident. On October 10, 2006, defendants Adams, White, Vasquez, Hannaford, Vickrey, Ostrander, Palmer, Runnels, Orozco, and Gentry moved to dismiss on the basis that plaintiff failed to exhaust administrative remedies before filing suit in this action. On January 3, and 24, 2007, defendants Foster and Swetich respectively joined in the motion.

/////

/////

////

**I. Facts**[1]

At all times relevant to the complaint, plaintiff was an inmate lawfully incarcerated at Folsom State Prison (hereafter "FSP"). Compl., at 4. Plaintiff alleges that on April 23, 2004, he was in the #2 dining hall when Officer Ramirez was assaulted by an inmate. *Id*. Plaintiff claims that after the assault, Officer Ramirez stumbled and many of the inmates in the dining hall laughed. *Id*. Subsequently, defendant Adams (the facility Captain) ordered plaintiff and eight other inmates to be placed in handcuffs and taken to a holding cage in the prison canteen where they were held and cuffed for approximately five and one-half hours. Compl., at 4-6. Plaintiff claims that he suffers from arthritis and tendinitis and must wear medical braces daily. *Id*., at 14. He states that, while in the holding cage, he complained to defendant White (a medical technical assistant) that he was suffering back and wrist pain from the handcuffs. *Id*., at 5. Defendant White spoke to prison custody staff who told him that the handcuffs were to remain on. *Id*. Defendant White asked plaintiff if he had suffered any injuries in the assault on Officer Ramirez, to which plaintiff responded that he was not involved in the assault. *Id*., at 5-6. Defendant White noted on plaintiff's medical sheet that plaintiff had suffered no injuries. *Id*., at 6.

Plaintiff submitted an inmate grievance (appeal FSP-04-0950) against defendant Adams and involved staff on April 23, 2004. *Id*. That grievance, FSP-04-0950, alleges discrimination and cruel and unusual punishment against defendant Adams arising out of the events on April 23, 2004. *Id*., at 25. On May 5, 2004, plaintiff was issued a response by defendant Gentry (an appeals coordinator at FSP), M. Shepard, and defendant Runnels (the Warden of FSP), stating that plaintiff could not file a staff complaint against defendant Adams because he had yet to attempt to resolve the problem at an informal level. *Id*., at 44-45. Plaintiff claims that defendant Orozco also "blocked" this complaint. *Id*., at 22. Plaintiff was instructed to follow the proper procedures and re-file his grievance. *Id*.

---

[1] For ease of reference, citations to the complaint reflect the pagination assigned by the court's Case Management – Electronic Case Filing (CM-ECF) program.

2

Plaintiff resubmitted his grievance and met with defendant Adams for an informal review during which defendant Adams asked him how to resolve the matter. *Id*., at 7. On May 19, 2004, defendant Adams spoke with plaintiff and asked him what it would take to make the first grievance, FSP-04-0950, "go away." *Id*. Plaintiff told defendant Adams that he wanted an apology and release from administrative segregation of the inmates who had been placed there following the incident in the dining hall on April 23, 2004. *Id*., at 31. Defendant Adams allegedly replied he would die before apologizing to "scum" like plaintiff. *Id*., at 7.[2]

Plaintiff claims that, approximately 22 days after their meeting, defendant Adams issued him a rules violation (referred to as a "CDC 115") for making false allegations against staff. *Id.,* at 8; Part 2, at 1-3. After speaking with defendant Ostrander, plaintiff believed that the rules violation report contained false information. *Id*. Plaintiff subsequently filed a second grievance on June 10, 2004, against defendant Adams for filing false reports against him. *Id.;* Part 2, at 6. The second grievance, FSP-04-01012, asserted allegations of retaliation by defendant Adams. *Id*. Plaintiff claims that defendant Gentry held onto this new appeal and wouldn't process it. *Id*. Plaintiff claims that, later, defendant Adams called him into his office and told him that his latest complaint regarding him would not "go anywhere" because he (Adams) had been "doing this a long time and knows how to stop complaints." *Id*.[3]

Plaintiff alleges that defendant Foster delivered to plaintiff a copy of a Rules Violation Report, CDC 115, made out by defendant Adams, and advised plaintiff that it would be in his

---

[2] Plaintiff filed a first level appeal regarding the alleged discrimination and cruel and unusual punishment against defendant Adams, which was denied on August 17, 2004, by defendant Palmer. Compl., at 35-37. Plaintiff filed a second level appeal, which was granted in part on September 9, 2004, insofar as it was investigated, but was denied in all other respects. *Id*., at 38-41. Plaintiff filed an appeal to the Director's level, which was denied on December 28, 2004. *Id*., at 42-43.

[3] The appeal was reviewed, however, and, at the first level, was granted in part, insofar as it was investigated, on August 17, 2004. Compl., Part 2, at 24-26. Plaintiff filed a second level appeal, which was granted in part, insofar as it was investigated, on September 20, 2004. *Id.*, at 31-35. Plaintiff filed an appeal to the Director's Level on January 4, 2005, which was denied. *Id*., at 36-39.

3

best interest to withdraw his complaints on defendant Adams because the Violation Report would then be dropped. *Id*., at 9.

On June 18, 2004, plaintiff was given a hearing for the rules violation. *Id*. At this hearing, plaintiff claims that he presented "undisputed facts showing a conspiracy on the parts of B. Gentry, Adams, Vasquez to not only negate and hinder my ability to pursue grievance [sic], but to punish me for filing [a] grievance against Adams." *Id*. Defendant Swetich presided over the hearing and found plaintiff guilty. *Id.* Plaintiff claims that after the hearing, defendant Swetich told him that if defendant Adams writes an inmate up for a rules violation, then that inmate is guilty. *Id*., at 10. Plaintiff was counseled and reprimanded, but not assessed any forfeiture of good time or work time credit as a result. *Id*., Part 3, at 6.

Plaintiff claims that defendants Adams, Vasquez, Ostrander, White, Hannaford, Vickrey, Gentry, and Orozco fabricated reports against him. *Id*., at 10. Plaintiff alleges that defendant Vasquez wrote a false report against him, stating that the reason he was initially placed in the holding cage by defendant Adams was for "disobeying an order." *Id*., at 11, 32. Defendant Palmer denied plaintiff's first appeal, regarding defendant Adams placing him in a holding cage, at the first level. Plaintiff claims that Defendant Vickrey issued a report stating that the events of April 23, 2004, transpired at 8 a.m., when Plaintiff claims that this time is incorrect. *Id*., at 20.

Plaintiff claims that the defendants generally knew or should have known that punishing him for allegedly laughing at Officer Ramirez would violate his Eight Amendment right to be free from cruel and unusual punishment, that retaliating against him for filing a grievance regarding Adams's conduct would and did violate his First Amendment right to petition the government for redress of grievances.

**II. Standards**

    **A. Motion to Dismiss for Failure to Exhaust**

Defendants Adams, White, Vasquez, Hannaford, Vickrey, Ostrander, Palmer, Runnels, Orozco, Gentry, Foster, and Swetich seek dismissal under Rule 12(b) of the Federal Rules of

Civil Procedure. While the Ninth Circuit has stated that Rule 12(b) is the proper mechanism for resolving questions arising under 42 U.S.C.§ 1997e(a), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), the reason underlying that decision has been undermined. The Ninth Circuit found that failure to exhaust was a matter in abatement which should be raised in a motion made under "unenumerated Rule 12(b)."[4] *Wyatt*, 315 F.3d at 1119. However, the United States Supreme Court recently clarified that failure to exhaust is an affirmative defense which defendant has the burden of pleading and proving. *Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910, 921 (2007). Federal courts appropriately consider affirmative defenses on summary judgment. Here, defendant's motion necessarily requires the court to consider the affidavits and exhibits presented for the purpose of proving the absence of exhaustion. Accordingly, the court finds that a motion for summary judgment is the proper mechanism for resolving the question of whether plaintiff satisfied the exhaustion requirement.

**B. Rule 56 Standards**

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[5] As explained by the Ninth Circuit, the utility of Rule 56 to screen which cases actually require resolution of disputed facts over material issues (through presentation of testimony and evidence at trial) has been clarified and enhanced.

---

[4] *Wyatt* is clear that regardless of nomenclature, a motion attacking failure to exhaust is not a challenge to the sufficiency of the complaint. It is a motion in which defendant must raise and prove by evidence the absence of exhaustion. *Id.* In this regard, the Ninth Circuit in *Wyatt* provides further guidance. It recognizes that when the district court looks beyond the pleadings to a factual record in deciding the exhaustion motion it necessarily does so under "a procedure closely analogous to summary judgment." *Id.*, n.14

[5] On August 2, 2006, the court expressly informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988). Pursuant to *Wyatt*, 315 F.3d at 1120, n.4, that order also expressly informed plaintiff of the requirements for opposing a failure to exhaust motion that is supported by affidavits or declarations and exhibits.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

**C. Failure to Exhaust**

The applicable statute is 42 U.S.C. § 1997e(a), which provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statue makes exhaustion a precondition to *suit*." (citation omitted)). A prisoner seeking leave to proceed *in*

6

*forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust. *Id.* at 1051; *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002). Defendant has the burden of proving that plaintiff did not exhaust. *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005); *Wyatt*, 315 F.3d at 1119.

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The regulations require the use of specific forms but contain no guidelines for grievance content. *Id.*, at §§ 3084.2, 3085. Prisoners ordinarily must present their allegations on one informal and three formal levels of review, although the informal and the first formal levels may be bypassed. *Id.*, at § 3084.5. A division head reviews appeals on the first formal level, *see Id.*, at § 3084.5(b)(3) (authorizing bypass of the first formal level when the division head cannot resolve it), and the warden or a designee thereof reviews appeals on the second formal level. *See Id.*, at § 3084.5(e)(1). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. *Id.*, at § 3084.1(a).

**III.  Analysis**

   **A.  Failure to Exhaust**

Defendants concede that on both of the claims raised in his complaint, plaintiff has exhausted his administrative remedies as to defendant Adams, but argue that plaintiff failed to exhaust his administrative remedies as to all other named defendants. To "properly" exhaust his administrative remedies, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules." *Woodford v. Ngo*, 548 U.S. __, 126 S.Ct. 2378, 2386 (2006). Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust."

With respect to the level of specificity required in a prisoner grievance, the Supreme Court recently held that a prisoner need not identify all of the defendants named in his lawsuit during the administrative grievance process. *Jones v. Bock*, 549 U.S. __, 127 S.Ct. 910, 922-23 (2007); *see also Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005). Following denial of his prison grievances for inadequate medical care, the plaintiff in Jones, an inmate of the Michigan Department of Corrections ("MDOC"), filed a Section 1983 action, naming as defendants several individuals not named during the grievance process. *Jones*, 127 S.Ct. at 917. The district court dismissed plaintiff's complaint for failure to exhaust administrative remedies because he had not identified any of the defendants named in his lawsuit during the grievance process; the Sixth Circuit upheld the ruling. The Supreme Court, however, held that in the absence of a prison grievance procedure mandating the naming of each individual, the Sixth Circuit rule imposing such a prerequisite to proper exhaustion was unwarranted. *Id*. at 923. The MDOC grievance form did not require a prisoner to identify a particular responsible party. Because the administrative appeals system did not require the prisoner to identify all potential defendants by name, his failure to do so was not fatal to his attempts to satisfy 42 U.S.C. § 1997e(a). *See id*. at 922-23. As stated by the court, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 923.

Similar to the grievance form in *Jones*, the 602 form used to initiate a CDC grievance does not require an inmate to name or identify specific persons. *See* Cal.Code Regs. tit. 15, § 3085 .2(a)(1). The 602 form requires an inmate only to describe the problem and the action that is requested. *See id.* Thus, because the CDC's own regulations do not require the prisoner to identify all potential defendants by name in the grievance, the PLRA cannot impose such a requirement as a prerequisite to exhaustion. *See Jones*, 127 S.Ct. at 923. As such, defendants' argument that plaintiff failed to exhaust is without merit. The court therefore recommends denial of defendants' motions to dismiss, treated as a motion for summary judgment, on this basis.

////

**B. Failure to State a Claim**

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Palmer v. Roosevelt Lake Log Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

To state a claim under 42 U.S.C. § 1983, plaintiff must allege that an identified defendant deprived plaintiff of a right secured to him by the Constitution or laws of the United States while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support plaintiff's claim. *Id.* There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

**I. Legal Standard for Eighth Amendment Claim**

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. *Wilson v. Seiter*,

9

501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); *McKinney v. Anderson*, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." *Hudson v. McMillian*, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *See, e.g., Wood v. Housewright*, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir. 1989). *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. *Farmer*, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. *Id.* at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. *Id.* at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – and requires a disregard of a risk of harm of which the actor is actually aware. *Id.* at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his

10

knowledge of a substantial risk of serious harm." *Id.* at 842, 114 S. Ct. at 1981.  If the risk was obvious, the trier of fact may infer that a defendant knew of the risk.  *Id.* at 840-42, 114 S. Ct. at 1981.  However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.  *Jackson v. McIntosh*, 90 F.3d 330 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.  *Id.*

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference.  *Shapley v. Nevada Bd. of State Prison Com'rs*, 766 F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm.  *McGuckin*, 974 F.2d at 1060, citing *Wood v. Housewright*, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and *Hudson*, 112 S. Ct. at 998-1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry.  *McGuckin*, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant."  *McGuckin*, 974 F.2d at 1061.

### ii. Legal Standard for Retaliation Claim

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983 because retaliatory actions may tend to chill individuals' exercise of constitutional rights.  *See Perry v. Sindermann,* 408 U.S. 593, 597 (1972).  A prisoner suing prison officials

under § 1983 for retaliation must show that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. *See Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir.1995); *Barnett v. Centoni,* 31 F.3d 813, 816 (9th Cir.1994). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *See Hines v. Gomez,* 108 F.3d 265, 267 (9th Cir.1997). At that point, the burden shifts to the prison official defendants to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald,* 55 F.3d 454, 461-62 (9th Cir.1995). Prisoners may not be retaliated against for exercising their right of access to the courts, *see id.* at 461; *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985), or for using established grievance procedures, *see Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989); *Hines v. Gomez,* 853 F.Supp. 329, 331-32 (N.D.Cal.1994).

Although a prisoner need not show that the retaliatory action taken in response to his constitutional rights independently deprived him of a constitutional right, *see Vignolo v. Miller,* 120 F.3d 1075, 1078 (9th Cir.1997), he must at least show that the defendants' actions caused him some injury. *See Resnick v. Hayes,* 200 F.3d 641, 647 (9th Cir.2000) (plaintiff at minimum must allege that his First Amendment rights have been chilled or infringed). He must demonstrate that the defendants' conduct caused him some adversity, not just a *de minimis* inconvenience. *See American Civil Liberties Union of Maryland v. Wicomico County,* 999 F.2d 780, 785-86 n. 6 (4th Cir.1993); *accord Hines,* 108 F.3d at 269

### iii. **Analysis**

In their motion to dismiss, defendants argue that plaintiff has failed to state a claim against defendants Palmer, Runnels, and Gentry, as those defendants cannot be liable simply because of their roles in the inmate appeals process. Plaintiff's sole allegation against defendant

1 Palmer is that defendant Palmer denied his appeal at the first level of review.  Defendants argue
2 that plaintiff has failed to state a claim against defendant Palmer because "failure to process a
3 grievance does not state a constitutional violation."  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th
4 Cir. 1993).  Defendants' characterization of plaintiff's claim is incomplete.  Plaintiff does not
5 claim that defendant Palmer failed to process his grievance, as was the case in *Buckley*.  It is
6 clear from the record that defendant Palmer did, in fact, process plaintiff's grievance.[6]  Plaintiff's
7 allegations suggest a claim that Palmer, in denying plaintiff's appeal, colluded with defendant
8 Adams' scheme to retaliate by pursuing a false disciplinary report against plaintiff, and that this
9 retaliation hindered his exercise of his rights under the First Amendment.  Plaintiff alleges facts,
10 which if true, at least demonstrate that he was engaged in a constitutionally protected activity
11 (i.e., pursuing a grievance alleging that defendant Adams' actions in cuffing and detaining black
12 inmates in holding cells following an assault on an officer was discriminatory and amounted to
13 torture).  The next question is whether plaintiff's factual allegations, if proven, would
14 demonstrate that Palmer actually participated in a scheme to retaliate for the protected activity.

15 Plaintiff's factual allegations do not show that the activity he engaged in was a
16 substantial or motivating factor for Palmer's denial of plaintiff's grievance regarding the
17 disciplinary report filed by Adams.  Plaintiff merely states that Palmer denied his appeal.
18 Plaintiff therefore has
19 failed to state a claim upon which relief may be granted.  The court recommends that the
20 complaint be dismissed as to defendant Palmer.

---

[6] Plaintiff has appended approximately 75 pages of documents to his verified complaint, including a copy of the First Level Appeal Response in which defendant Palmer denied plaintiff's appeal in whole.  Compl., at 35-37.  Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987).  A court may consider documents which are not expressly incorporated into the complaint, but "upon which the plaintiff's complaint necessarily relies."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998).

1      Plaintiff alleges that defendants Runnels and Gentry refused to process his grievance
2 against defendant Adams as a staff complaint and instead returned it with the instruction that
3 plaintiff must first discuss the incident with defendant Adams at the informal level of review.
4 Plaintiff further alleges that defendant Gentry refused to process his second grievance against
5 defendant Adams, fabricated reports against him, punished him, and consequently hindered his
6 ability to file grievances. Plaintiff does not allege sufficient facts to support these claims. The
7 facts alleged in the complaint demonstrate nothing more than that Runnels and Gentry processed
8 plaintiff's appeal. Moreover, plaintiff's own exhibit to his complaint shows that his grievance
9 was, in fact, processed by defendant Gentry as an appeal alleging staff misconduct. Compl., Part
10 2, at 39. Plaintiff has failed to state a claim upon which relief may be granted as to both
11 defendants Runnels and Gentry. The court therefore recommends granting the motion to dismiss
12 as to these defendants.
13     The court shall dismiss a case at any time if the court determines that the action or appeal
14 fails to state a claim on which relief may be granted. *See* 28 U.S.C. 1915(e)(2)(ii). The court
15 finds that plaintiff's complaint also fails to state a claim as to defendants Orozco, Ostrander,
16 White, Vasquez, Hannaford, Vickrey, Foster, and Swetich. Plaintiff's allegations that (1)
17 defendant Orozco blocked his ability to have his complaint against defendant Adams filed as a
18 staff complaint, (2) defendant Ostrander fabricated reports against him, (3) defendant White
19 noted on plaintiff's medical sheet that plaintiff had suffered no injuries, (4) defendant Vasquez
20 fabricated reports against him, (5) defendants Hannaford and Vickrey stated that plaintiff was
21 only left in handcuffs for an hour and that the incident occurred at a different time than plaintiff
22 claims, (6) defendant Foster advised plaintiff that if he dropped his complaint, defendant Adams
23 would drop the disciplinary report, (7) defendant Swetich found plaintiff guilty of making a false
24 complaint against defendant Adams due to favorable bias toward defendant Adams, who was her
25 correctional captain, are all vague, conclusory, and not supported by the record. These
26 conclusory allegations do not suffice to state a claim for retaliation as they do not establish a

14

retaliatory action, motive, or both.  The court therefore recommends that plaintiff's complaint be dismissed for failure to state a claim on which relief may be granted as to each of these defendants.

Accordingly, IT IS RECOMMENDED that:

1. Defendants' October 10, 2006, motion to dismiss for failure to exhaust administrative remedies be denied as to all defendants save and except defendant Adams;

2. Defendants' October 10, 2006, motion to dismiss for failure to state a claim be granted as to defendants Palmer, Runnels, Gentry, Orozco, Ostrander, White, Vasquez, Hannaford, Vickrey, Foster, and Swetich;

3. Defendants Palmer, Runnels, Gentry, Orozco, Ostrander, White, Vasquez, Hannaford, Vickrey, Foster, and Swetich be dismissed from the action; and

4. Defendant Adams be granted twenty days in which to file an answer.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 29, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE