IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NORMAN GREGORY,

      Plaintiff,                           No. CIV S-05-1393 FCD EFB P

    vs.

B.C. ADAMS, et al.,                FINDINGS AND RECOMMENDATIONS

      Defendants.
_____/

Plaintiff is a prisoner without counsel suing for alleged civil rights violations. *See* 42 U.S.C. § 1983. He claims that defendants violated his Eight Amendment rights and retaliated against him for pursuing a grievance. Defendant Adam is the sole remaining defendant.

Defendant Adams filed a motion for summary judgment on April 6, 2007. Defendant contends in his motion that (1) the undisputed facts establish that he did not violate plaintiff's Eighth Amendment rights, and (2) that he did not retaliate against plaintiff for filing an inmate grievance.[1]

////

---

[1] The court recognizes that plaintiff's complaint states a claim for an Equal Protection violation based on racial discrimination. Defendant does not address this claim in his motion. The court will not address this issue *sua sponte* and that claim remains.

1

**I.     Facts**

At all times relevant to the complaint, plaintiff was an inmate lawfully incarcerated at Folsom State Prison (hereafter "FSP").  Plaintiff's Verified Complaint, ("Compl."), at 4; Def.'s Mot. for Summ. J., Ex. A, Decl. of B. Adams, ("Adams Decl."), at 2:1-7.  Defendant Adams was a lieutenant at Folsom State Prison.  Compl., at 3.

Plaintiff alleges that on April 23, 2004, he was in the #2 dining hall when Officer Ramirez was assaulted by an inmate.  *Id*.  Plaintiff claims that after the assault, Officer Ramirez stumbled and many of the inmates in the dining hall laughed.  Compl., at 4.  Soon after, defendant Adams (the facility Lieutenant) and other prison staff responded to the assault.  Adams Decl., at 2:4-5.  Defendant Adams noticed that there were two tables of inmates (which included plaintiff) that were standing and cheering loudly.  *Id*., at 2:5-12.  Adams became concerned that the cheering inmates may cause a riot or provoke another attack on staff or inmates and he therefore ordered them to sit down and be quiet.  *Id.*  Adams states that the inmates did not obey his order.  *Id*., 2:14.  Subsequently, Adams (the facility Captain) ordered plaintiff and seven other inmates to be placed in handcuffs and taken to a holding cage in the prison canteen where they were held in cells and handcuffs for approximately five-and-one-half hours for "disobeying [an] order."  Compl., at 4-6; Adams Decl., at 2:13-19, 3:1-4, Pl.'s Opp'n, Ex. A.  The eight inmates, including plaintiff, were black.  Compl., at 4.

Plaintiff claims that he suffers from arthritis and tendinitis and must wear medical braces daily.  Compl., at 14.  During the hours that plaintiff was cuffed and detained, Adams and two other officers frequently walked back and forth from #5 building to the program office.  As they did so plaintiff repeatedly asked them to remove the cuffs but they did not.  Pl.'s Opp'n, Decl. in Supp. ("Pl.'s Decl."), at ¶ 23.  Plaintiff also contends that, while in the holding cage, he complained to Medical Technical Assistant White that he had a lot of back and wrist pain from the handcuffs being too tight and being left on for too long.  *Id*., at ¶ 26.  Plaintiff asked White to remove the cuffs.  *Id.*  White spoke to prison custody staff who told him that the handcuffs were

2

to remain on. *Id*., at ¶ 27. White asked plaintiff if he had suffered any injuries in the assault on Officer Ramirez and plaintiff responded that he was not involved in the assault. *Id*., at ¶ 25; Compl., at 5-6. White noted on plaintiff's medical sheet that plaintiff had suffered no injuries. Compl., at 6. Plaintiff continued to ask Adams to remove the cuffs every time he saw him walk by. Pl.'s Decl., at ¶¶ 30, 31. When plaintiff was allowed to return to his cell, he required the assistance of other inmates because pain in his wrists was causing him difficulty in grasping the stair handrail, and pain in his back made it difficult for him to walk. *Id.*, ¶ 40.

Plaintiff submitted an inmate grievance (appeal FSP-04-0950) against defendant Adams and involved staff on April 23, 2004. *Id;* Adams Decl., at 2:20-22. That grievance, FSP-04-0950, alleged that defendant Adams discriminated against plaintiff and tortured him. *Id*., at 25; Adams Decl., at 2:20-22.

Upon review of the grievance, Adams noticed that plaintiff included allegations that he was subjected to torture when he was placed in handcuffs. Adams Decl., 2:20-22. Adams claims that plaintiff was "lawfully" placed in handcuffs and that he did not subject plaintiff to "torture." *Id*., at 3:13-18. Plaintiff met with Adams for an informal review during which Adams asked him how to resolve the matter. Compl., at 7. On May 19, 2004, Adams spoke with plaintiff and asked him what it would take to make the first grievance, FSP-04-0950, "go away." *Id*. Plaintiff told Adams that he wanted an apology and release from administrative segregation of the inmates who had been placed there following the incident in the dining hall on April 23, 2004. *Id*., at 31. Plaintiff claims that Adams replied that he would die before apologizing to "scum" like plaintiff. *Id*., at 7.[2]

////

---

[2] Plaintiff filed a first level appeal regarding the alleged discrimination and cruel and unusual punishment against defendant Adams, which was denied on August 17, 2004, by defendant Palmer. Compl., at 35-37. Plaintiff filed a second level appeal, which was granted in part on September 9, 2004, insofar as it was investigated, but was denied in all other respects. *Id*., at 38-41. Plaintiff filed an appeal to the Director's level, which was denied on December 28, 2004. *Id*., at 42-43.

3

1   On May 25, 2004, Adams issued plaintiff a Rules Violation Report ("RVR"), also
2  referred to as a "CDC 115," for making false allegations against staff. Compl., at 8; Part 2, at 1-
3  3; Pl.'s Opp'n, Ex. C, at 4. This RVR stated that "inmate Gregory made the allegation that I
4  'tortured' him. This charge is very serious and if unfounded, Inmate Gregory must be held
5  accountable."[3] *Id*., at 4. Defendant cited to Webster's New World Dictionary, Third College
6  Edition, for the definition of "torture," and also to the California Code of Regulations ("Cal.
7  Code Regs."), Title 15, § 3391 regarding the filing of false allegations against a peace officer.
8  *Id*., at 4-5. This tit-for-tat exchange of false allegations claims seems to have taken on a life of
9  its own. Plaintiff subsequently filed a second grievance on June 10, 2004, against Adams for
10 filing false reports against him. Compl., Part 2, at 6. The second grievance, FSP-04-01012,
11 asserted allegations of retaliation by Adams. *Id*. Plaintiff claims that, later, Adams called
12 plaintiff into his office and told plaintiff that his latest complaint regarding him would not "go
13 anywhere" because he (Adams) had been "doing this a long time and knows how to stop
14 complaints." *Id*. The appeal was reviewed, however, and on August 17, 2004, at the first level,
15 was granted in part, insofar as it was investigated. Compl., Part 2, at 24-26. Plaintiff filed a
16 second level appeal, which was granted in part, insofar as it was investigated, on September 20,
17 2004. *Id.*, at 31-35. Plaintiff filed an appeal to the Director's Level on January 4, 2005, which
18 was denied. *Id*., at 36- 39.

19   Plaintiff claims that the defendant generally knew or should have known that punishing
20 him for allegedly laughing at Officer Ramirez would violate his Eight Amendment right to be
21 free from cruel and unusual punishment, and that retaliating against him for filing a grievance
22 regarding defendant's conduct would and did violate his First Amendment right to petition the
23 government for redress of grievances.

---

25   [3] At the hearing on the RVR, the hearing officer found plaintiff's allegations
26 unsubstantiated, but the disposition was an assessment of 0 days credit forfeiture, counseling and reprimanding. Pl.'s Opp'n, Ex. C at 9.

4

## II. Summary Judgment Standards

Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases with no disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over facts material to the outcome of the case; e.g., issues that can only be determined through presentation of testimony and evidence at trial such as credibility determinations of conflicting testimony over dispositive facts.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322). There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial. *Celotex,* 477 U.S. at 323.

Thus, to overcome summary judgement an opposing party must show a dispute that is both genuine, and involving a fact that makes a difference in the outcome.[4] Two steps are necessary. First, according to the substantive law, the court must determine what facts are material. Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial. *Id.,* at 248.

When the opposing party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). The moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986).

If the moving party meets its burden, the burden shifts to the opposing party to establish genuine material factual issues. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.[5] The opposing party must demonstrate that the disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are

---

[4] On January 20, 2006, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland,* 154 F.3d 952, 957 (9th Cir.1998) (en banc), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2392, 144 L.Ed.2d 793 (1999), and *Klingele v. Eikenberry,* 849 F.2d 409, 411-12 (9th Cir.1988).

[5] The nonmoving party with the burden of proof "must establish each element of his claim with significant probative evidence tending to support the complaint." *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994) (internal quotations omitted). A complete failure of proof on an essential element of the nonmoving party's case renders all other facts immaterial, and entitles the moving party to summary judgment. *Celotex*, 477 U.S. at 322.

genuine, i.e., the parties' differing versions of the truth require resolution at trial, *see T.W. Elec.*, 809 F.2d at 631. The opposing party may not rest upon the pleadings' mere allegations or denials, but must present evidence of specific disputed facts. *See Anderson*, 477 U.S. at 248.[6] Conclusory statements cannot defeat a properly supported summary judgment motion. *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 255. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).

If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issue raised on this motion, i.e., whether the defendant used excessive force in violation of the Eight Amendment.. Equally critical is that "deliberate indifference" is an essential element of plaintiff's cause of action. Therefore, to withstand defendant's motion, plaintiff may not rest on the mere allegations or denials of his pleadings. He must demonstrate a genuine issue for trial, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989), and he must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the

---

[6] A verified complaint may be used as an affidavit in opposition to the motion. *Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

**III. Discussion**

    **A. Excessive Force in Violation of the Eighth Amendment**

Plaintiff claims that defendant Adams used excessive force and subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment by ordering him handcuffed and detained following the assault on Officer Ramirez, in which plaintiff was not involved. Overly tight handcuffs can constitute excessive force. *Meredith v. Erath*, 342 F.3d 1057, 1062 (9th Cir.2003) (holding that placing a detainee in handcuffs was unlawful where officers were investigating tax fraud and the handcuffs caused the plaintiff pain); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir.1993) (no reasonable officer could believe that fastening handcuffs so tightly around his wrist that they caused Palmer pain and left bruises that lasted for several weeks was constitutional).

Where prison officials are accused of using excessive force in violation of the Eighth Amendment, the Supreme Court has held that "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Court considers the following factors: the need for application of force; the relationship between the need and the amount of force used; the extent of the injury inflicted; the threat "reasonably perceived by the responsible officials"; and "any efforts made to temper the severity of a forceful response." *Id*. (*citing Whitley v. Albers*, 476 U.S. 312, 321 (1986)).

In considering those factors in this case, plaintiff has presented evidence that defendant Adams ordered him to be handcuffed and placed in a holding cell in the dining hall and that he was not released, despite his continuous pleas and complaints of pain to Adams and his subordinate officers, until more than five hours had elapsed. It remains to be seen whether his testimony in that regard will be credited by the trier of fact. In his motion for summary judgment, Adams claims that restraining plaintiff in this manner was necessary to restore discipline in the

8

1 dining hall following the assault on Officer Ramirez. Missing, however, is an explanation why it
2 was necessary that plaintiff be handcuffed in excess of five hours, in addition to being detained in
3 a cell, to achieve that purpose. On the facts before the court, defendant has not been established
4 as a matter of law that the use of handcuffs was necessary. If a jury concludes that restraining
5 plaintiff in both handcuffs and a cell in excess of five hours was not necessary, the relationship
6 between the need and the amount of force used is disproportionate.

7 Plaintiff submits evidence that he suffers from arthritis and tendinitis, that he was wearing
8 a wrist brace at the time the handcuffs were placed on him, that he informed the Medical
9 Technical Assistant ("MTA") that he had a chrono for waist chains due to his condition, that he
10 repeatedly called out to have the cuffs loosened because he was in acute pain, and that those
11 appeals were ignored for a protracted period of time. Although he apparently did not seek
12 medical treatment afterward, that fact, alone, is not dispositive. The malicious and sadistic use of
13 force to cause harm always violates contemporary standards of decency, regardless of whether or
14 not significant injury is evident. *Hudson*, 503 U.S. at 9; *see also Oliver v. Keller*, 289 F.3d 623,
15 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of
16 force, not *de minimis* injuries).

17 The evidence on this motion does not show that plaintiff posed a threat that could be
18 "reasonably perceived" by defendant Adams. *Hudson,* 503 U.S. at 7 (*citing Whitley,* 476 U.S. at
19 321). Although he was among a group that included some inmates who laughed and became loud
20 and was temporarily detained, defendant makes no allegation that plaintiff himself laughed or
21 incited other inmates to do so. Plaintiff's evidence, on the other hand, is that he was not involved
22 in any way with the attack on Officer Ramirez, that he was about to eat breakfast with the other
23 inmates in the dining hall when the attack occurred, that following the attack laughter ensued
24 among a large number of inmates including black, white and Hispanic inmates, and that plaintiff
25 was included in a small group of black inmates rounded up and detained in an effort by defendant
26 Adams to restore discipline in the dining hall. If his testimony as to these facts is believed at trial,

9

a reasonable jury could well conclude that Adams could not have reasonably perceived that plaintiff posed a threat that required him to be celled and continuously cuffed for more than five hours.

As to the final factor, whether the use of force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," *Hudson v. McMillian*, 503 U.S. at 7, plaintiff's version of the facts could be believed by a jury, and if so, is specific enough that it establishes that defendant Adams did not make "any efforts to temper the severity of a forceful response." *Id.* (*citing Whitley,* 476 U.S. at 321). Plaintiff's testimony shows that his many appeals for loosening his cuffs were ignored, particularly by defendant Adams.

Therefore, drawing all inferences in favor of the non-moving party, the record on this motion establishes that there is a genuine issue of material fact as to plaintiff's claim of excessive force. The court therefore recommends denying defendant's motion on this basis.

**B. Retaliation in Violation of the First Amendment**

Plaintiff claims that after he was released from the handcuffs and holding cell, he immediately filed a grievance against defendant Adams for racial discrimination and for the use of excessive force, which he described as "torture." He claims that because of this grievance, Adams retaliated against him by filing a Rules Violation Report alleging that plaintiff made false allegations against him and citing to a dictionary definition of "torture" in defense of plaintiff's allegations. This RVR did not result in plaintiff losing time credits or being sent to administrative segregation but did result in counseling and a reprimand.

Inmates have a right to be free from retaliation for the exercise of constitutionally protected rights. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). The Ninth Circuit treats the right to file a prison grievance as a constitutionally-protected First Amendment right. *Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997); *see also Hines v. Gomez*, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to utilize a prison grievance procedure is a constitutionally

protected right, cited with approval in *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)); *Graham v. Henderson*, 89 F.3d 75 (2nd Cir. 1996) (retaliation for pursing a grievance violates the right to petition government for redress of grievances as guaranteed by the First and Fourteenth Amendments); *Jones v. Coughlin*, 45 F.3d 677, 679-80 (2nd Cir. 1995) (right not to be subjected to false misconduct charges as retaliation for filing prison grievance); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (filing disciplinary actionable if done in retaliation for filing inmate grievances); *Franco v. Kelly*, 854 F.2d 584, 589 (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy" (alterations and citation omitted)); *Cale v. Johnson*, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in retaliation for complaint about food actionable).

In order to state a retaliation claim, a plaintiff must plead facts that suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). The plaintiff must also plead facts that suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory. *Pratt*, 65 F.3d at 806 (citing *Rizzo*, 778 F.2d at 532). The evidence shows that defendant filed an RVR against plaintiff for plaintiff's filing of a grievance accusing defendant of "torture." In the context of the RVR, defendant cited to a dictionary definition of "torture" in argument that plaintiff was falsely accusing him of something he did not do. Pl.'s Opp'n, Ex. C at 37. He also cited to Cal. Code Regs. tit. 15, § 3391, which states that "[a]n inmate/parolee who makes a complaint against a departmental peace officer, knowing it is false, may be issued a serious disciplinary rule violation . . . ." The parties may differ on the definition of torture, but there is no dispute that plaintiff actually did feel he had been "tortured." Whether the underlying grievance was found to have merit is not determinative. He clearly had the right to complain in the form of a grievance. He provided enough basis for the grievance to show that, although not successful, he had a subjective good faith belief in the truth of his assertions. He provided in his grievance a factual basis for this allegation by describing the pain

he endured from being cuffed for more than five hours.  Thus, a reasonable jury could conclude on plaintiff's evidence that plaintiff was disciplined as retaliation for having exercised his right to file a grievance rather than for misconduct (lying) in the process of doing so.  In short, plaintiff has submitted sufficient evidence for a jury to decide whether defendant's filing of the RVR was motivated by retaliation and did not serve a legitimate correctional goal.  Accordingly, the undersigned recommends denying defendant's motion for summary judgment on this claim as well.

Accordingly, it is hereby RECOMMENDED that defendant's April 6, 2007, motion for summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:   February 15, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE